NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOAO CONTROL & MONITORING SYSTEMS, LLC, and RAYMOND A. JOAO, individually and as assignee of Interested Parties,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>JACK OLIVO, ESQ., OLIVO LAW GROUP, P.C., WARD & OLIVO, and fictitious defendants JOHN DOE(S) I-X,<br><br>　　　　　　Defendants. | Civil Action No. 2:13-cv-04419-SDW-SCM<br><br><br><br><br>**OPINION**<br><br><br><br><br>**January 5, 2015** |
| JACK OLIVO, ESQ., and OLIVO LAW GROUP, P.C.,<br><br>　　　　　　Third-Party Plaintiffs,<br><br>　　　　v.<br><br>HENINGER GARRISON HARRIS, LLC STEVEN W. RITCHESON, ESQ., TIMOTHY C. DAVIS, ESQ., MAUREEN V. ABBEY, ESQ., JACQUELINE KNAPP BURT, ESQ., DOUGLAS L. BRIDGES, ESQ. and WHITE FIELD, INC.,<br><br>　　　　　　Third-Party Defendants. | |

**WIGENTON,** District Judge.

　　Before the Court are two Motions to Dismiss the Complaint filed by Third-Party Plaintiffs

Jack Olivo, Esq. ("Jack Olivo") and Olivo Law Group, P.C. ("Olivo Law") (collectively "Olivo

1

Defendants" or "Third Party Plaintiffs"). Third-Party Defendants Steven W. Ritcheson ("Ritcheson") and White Field, Inc. ("White Field") (collectively "White Field Defendants") seek dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and Third-Party Defendant Heninger Garrison Davis, LLC ("HGD") challenges Third Party Plaintiffs' standing pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Jurisdiction and venue are proper pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1391(b), respectively.  These motions are decided without oral argument. Fed. R. Civ. P. 78; L. Civ. R. 78.1.  For the reasons set forth below, this Court **GRANTS** both motions to dismiss.[1]

I.      FACTUAL AND PROCEDURAL HISTORY

   A. The Parties

In 2008, Plaintiffs Joao Control & Monitoring Systems, LLC ("JCMS") and Raymond A. Joao ("Joao") (collectively "Plaintiffs") retained Defendant/Third Party Plaintiff Jack Olivo, of the law firm Ward & Olivo ("W&O"), a New Jersey law firm (now dissolved), to represent JCMS in connection with the enforcement of its patents. *Am. Compl.* ¶ 17. Plaintiff JCMS is a Delaware corporation with its principal place of business in Yonkers, New York. *Am. Compl.* ¶ 1. Plaintiff Joao is the President and CEO of JCMS and a citizen of New York. *Id.* ¶ 2.  Defendant Jack Olivo is a citizen of New Jersey and Defendant Olivo Law is a New Jersey corporation with its principal place of business in Chatham, New Jersey. *Id.* ¶¶ 5, 6.

In 2010, with Plaintiffs' consent, Olivo retained Third Party Defendant Steven Ritcheson of White Field, Inc., a California law firm, to file, on JCMS's behalf, the lawsuit captioned *Joao Control & Monitoring Systems of California, LLC v. Acti Corporation, Inc., et al.*, Docket No. 10-

---

[1] The Ritcheson motion and the HGD motion were separately filed, but they will be addressed together in this Opinion in the interest of judicial efficiency.

cv-1090, in the United States District Court for the Central District of California ("the Xanboo Action"). *Am. Compl.* ¶¶ 24, 73-75. While the Xanboo action was pending, Ward & Olivo was dissolved and Jack Olivo allegedly became affiliated with Third Party Defendant Heninger Garrison Davis, LLC ("HGD") "in an 'of counsel' capacity to maintain a continuity of representation for [his] clients, including JCMS." See *HGD Reply Brief, Ex. A, Declaration of Dennis J. Drasco ("Drasco Decl.")* ¶ 2.[2] Notwithstanding his continued representation of JCMS, Jack Olivo was not an attorney of record in the Xanboo Action. *Id*. Rather, Steven Ritcheson, who later dissolved White Field, Inc. to join HGD, along with several other attorneys from HGD were counsel of record for JCMS in the Xanboo Action. *Affidavit of Diana C. Manning ("Manning Aff."), Ex. A, PACER Docket Sheet for Xanboo Action.*

### B. The Underlying Action – JCMS Action

The Third-Party Complaint at issue evolves from a Complaint filed by Plaintiffs on July 25, 2013, alleging legal malpractice against the Olivo Defendants. *Am. Compl.*, Dkt No. 3.

According to the Complaint, in December of 2008, the Olivo Defendants were retained to represent JCMS and Joao in connection with the enforcement of their patents against certain infringers. *Am. Compl.* ¶ 17. On December 15, 2010, the Olivo defendants directed Third Party Defendants Ritcheson and his law firm, White Field, Inc., a California law firm that provided local counsel services to Ward & Olivo on certain of its representations, to file a patent infringement action referred to by the parties as the Xanboo Action in the United States District Court for the Central District of California. *Id.* ¶¶ 24, 73-75.[3]

---

[2] Olivo is not presently affiliated with HGD. He is currently a member of Olivo Law Group, P.C., which is also a Defendant/Third Party Plaintiff in this matter.

[3] Olivo Defendants first retained White Field as local counsel in April 2010, for the representation of one of its clients, SMDK Corporation. (*Ritcheson Decl., ¶ 3*). Olivo Defendants enlisted White Field's services in connection

3

Xanboo, Inc. was one of the twenty-one defendants in the litigation. *Am. Compl.* ¶ 24. Plaintiffs allege that on February 20, 2012, Olivo entered a settlement agreement with Xanboo without Plaintiffs' written consent and on behalf of inappropriate and/or unauthorized entities ("February 2012 agreement"). *Id*. ¶¶ 73-79, 90-92. Plaintiffs further allege that because Plaintiffs refused to acknowledge the validity of the unauthorized settlement, on April 10, 2012, Xanboo sought leave to file a third-party complaint against Joao personally for alleged breach of the February 2012 agreement. *Id*. ¶ 93, 94. The Court granted leave and a third-party complaint was filed against Joao. *Id*. ¶ 93-95. Then, on June 6, 2012, at the Court's invitation, Xanboo moved to enforce the February 2012 agreement. *Id. ¶* 73. To avoid an adverse ruling on the motion to enforce, Plaintiffs negotiated a new settlement ("July 2012 settlement") for an amount allegedly far below what JCMS would have received but for the February 2012 agreement. *Id*. ¶ 96. Consequently, on July 22, 2012, Plaintiffs brought a legal malpractice action against the Olivo defendants. *Id*.

C. **The Olivo Complaint**

On September 17, 2013, Defendants/Third Party Plaintiffs Jack Olivo and Olivo Law P.C. filed a Third Party Complaint against several parties including Steven Ritcheson, White Field, and HGD,[4] asserting claims for common law contribution and indemnification as joint tortfeasors in the JCMS action. *Olivo Compl.* ¶¶ 18, 24, 29, and 33. [5] White Field is no longer an active California corporation. On or about August 1, 2012, White Field transferred its open representations,

---

with the Xanboo action in December 2010, but the parties did not execute a formal retainer agreement until September 2011. *See Manning Affidavit, Ex. B.*

[4] With the exception of Steven Ritcheson, the Olivo Defendants voluntarily dismissed the claims asserted against the individual third party defendants, all of whom are attorneys employed or otherwise affiliated with HGD. See ECF Dkt No. 27.

[5] None of the third party defendants are named in the JCMS action. See Am. Compl.

4

including the Xanboo Action, to HGD, and White Field's two attorneys—Mr. Ritcheson and his associate—became HGD employees. *Ritcheson Decl.*, ¶ 3. HGD is a law firm incorporated in Alabama with its principal place of business in Birmingham, Alabama. *Olivo Compl.* ¶¶ 2, 3. The Olivo defendants assert that as counsels of record in the Xanboo litigation, Third Party Defendants contributed to and are jointly liable for any and all damages incurred by Plaintiffs for the alleged mismanagement of the Xanboo action. *Id.*

On March 31, 2014, Ritcheson and White Field filed the instant motion to dismiss for lack of personal jurisdiction, arguing that they are not subject to general or specific jurisdiction in New Jersey.[6] *Dkt. No.* 39.  On April 9, 2014, HGD filed its motion to dismiss the Olivo Complaint primarily on the basis that the Olivo Defendants lack standing to bring the claims asserted therein, or alternatively, failed to satisfy the pleading standards.  *Dkt. No*. 40.

## II.  LEGAL STANDARD

### a.  *Motion for Lack of Personal Jurisdiction*

To withstand a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff only needs to allege sufficient facts to establish a prima facie case of jurisdiction over the defendant. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Put differently, Plaintiff bears the burden of demonstrating, with "reasonable particularity," a defendant's minimum contacts with the forum state sufficient to establish personal jurisdiction. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992); *Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). Similar to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court is required to accept

---

[6] Initially, Mr. Ritcheson submitted the instant motion to dismiss on behalf of himself and White Field, Inc.  However, on November 3, 2014, Magistrate Judge Steven Mannion terminated the motion because while Mr. Ritcheson can appear pro se, White Field Inc., a corporate entity, cannot. (ECF #55). On November 6, 2014, the instant motion was renewed by George Proios, counsel for both White Field Defendants. (ECF #57).

plaintiff's allegations and all reasonable inferences therefrom as true, *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d. 538, 556 (2009), and "construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

Federal Rule of Civil Procedure 4(e) "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Pennzoil Prod. Co. v. Colelli & Assoc.*, *Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) (citation omitted). New Jersey's long-arm statute permits personal jurisdiction over non-resident defendants to the extent allowed by the Due Process Clause of the Fourteenth Amendment. N.J. Ct. R. 4:4-4; *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d. Cir. 1981), *cert. denied*, 454 U.S. 1085 (1981). Therefore, this Court's analysis is strictly limited to determining whether personal jurisdiction over Ritcheson is proper and comports with due process.

This Court is guided by the two-part analysis delineated in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-77 (1985) which requires this Court to first consider whether minimum contacts exist between a defendant and the forum state, and if so, it must then determine whether the exercise of personal jurisdiction would nevertheless offend "traditional notions of fair play and substantial justice" inherent in the Due Process Clause. *See also, Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Minimum contacts between a defendant and the forum state must be of a nature and quality such that a defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Inherent in the concept of minimum contacts is the requirement that a defendant purposefully avail itself of the privilege of conducting business in the forum state and thereby invoke the benefits and protections of its laws. *Burger King*, 471 U.S. at 475. This requirement

ensures that a defendant is not amenable to jurisdiction solely on the basis of "random," "fortuitous," or "attenuated" contacts, or the "unilateral activity of another party or a third person." *Id*. (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984); *World-Wide Volkswagen*, 444 U.S. at 299; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). The Court's exercise of jurisdiction is limited to a defendant's specific activities within the forum state. *Helicopteros*, 466 U.S. at 416. That is, the claim must ultimately arise out of or relate to a defendant's contacts with the forum state. *Id*. Only upon the plaintiff demonstrating sufficient minimum contacts between a defendant and the forum state may the Court consider whether exercise of jurisdiction would comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l. Shoe*, 326 U.S. at 320); *Pennzoil*, 149 F.3d at 201.

For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. *World-Wide Volkswagen*, 444 U.S. at 292. To determine reasonableness, a court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering substantive social policies. *Id*.

### b. Motion to Dismiss for Lack of Standing

Plaintiffs bear the burden of proving standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992); *ACLU-NJ ex rel. Miller v. Twp. of Wall*, 246 F.3d 258, 261 (3d Cir. 2001). Standing is a jurisdictional requirement. *Storino v. Borough of Pt. Pleasant Beach*, 322 F.3d 293, 295-96 (3d Cir. 2003). "If plaintiffs do not possess Article III

standing, both the District Court and [the Third Circuit] lack subject matter jurisdiction to address the merits of plaintiffs' case." *Twp. of Wall*, 246 F.3d at 261 (citing *Warth v. Seldin*, 422 U.S. 490, 498, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975); *Morris v. Horn*, 187 F.3d 333, 344 (3d Cir. 1999)). For the purpose of determining standing, the court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party. *See Warth*, 422 U.S. at 501.

To obtain standing, 1) the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is "concrete and particularized and actual or imminent, not conjectural or hypothetical"; 2) there must be a causal connection between the injury and the conduct complained of—"the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court"; and 3) it must be likely, not merely speculative, that the injury will be redressed by a favorable decision. *Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175-76 (3d Cir. 2000) (quoting *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 484-85 (3d Cir. 1998)).

### III. DISCUSSION

#### a. *Personal Jurisdiction over Ritcheson*

Because the White Field Defendants have raised a jurisdictional defense, the Olivo Defendants bear the burden of establishing with reasonable particularity that Ritcheson has had sufficient contacts with New Jersey to support jurisdiction in this forum. *See Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n.*, 819 F.2d 434, 437 (1987). They must show general jurisdiction, that is, that the White Field Defendants had continuous and systemic contacts with

New Jersey, or specific jurisdiction, that their cause of action arose upon White Field Defendants' activities within New Jersey. *See id.* The Olivo Defendants must carry this burden by presenting more than "mere affidavits which parrot and do no more than restate plaintiff's allegations without identification of particular defendants and without factual content." *See Time Share Vacation Club v. Atlantic Resorts, Inc.*, 735 F.2d 61, 66 (3d Cir. 1984). Here, the Olivo Defendants' evidence borders on inadequate. The Third Party Complaint scarcely addresses personal jurisdiction. *See ECF No. 15*. Furthermore, the only affidavit submitted by Olivo Defendants in opposition of the instant motion is that of its counsel, Diana C. Manning, which merely attests to the authenticity of certain documents and contains no factual representations. *Affidavit of Diana C. Manning ("Manning Aff.")*.

The Olivo Defendants concede the absence of general jurisdiction. It is undisputed that Ritcheson is a citizen of the State of California, who has never lived or owned any real or personal property located in New Jersey, maintained a bank account in New Jersey, or sought admission to practice law in New Jersey.[7] *Am. Compl.* ¶¶ 3, 5-10. Similarly, before it ceased operations in 2012, White Field maintained its principal and only place of business in Los Angeles, California. *Declaration in Support of Motion to Dismiss Third Party Complaint on behalf of Steven W. Ritcheson and White Field, Inc.* (*"Ritcheson Decl."*) ¶ 3. As such, the White Field Defendants have not maintained continuous and systemic contacts with New Jersey from which general jurisdiction may be derived. Rather, the Olivo Defendants contend that "the parties' undisputed business relationship devoted to the joint representation of various clients in numerous litigations provides sufficient minimum contacts for the exercise of specific jurisdiction." *Opp. to Ritcheson*

---

[7] On one occasion, Ritcheson was admitted *pro hac vice* in a matter unrelated to the Xanboo Action in the District Court of New Jersey, but did not personally appear before the court or otherwise participate in the case, which is now closed. (*Ritcheson Decl.* ¶ 6-7).

9

*Motion*, p. 4-5.

The Third Circuit has declined to exercise specific jurisdiction on analogous facts. Specific jurisdiction is established only when plaintiff proffers evidence that a non-resident defendant "purposefully directed" his activities to the forum state or its residents, and that the cause of action is related to or resulted from those contacts. *See Kehm Oil Co.,* 537 F.3d at 300. In *Reliance Steel Products v. Watson, Ess, Marshall and Enggas*, 675 F.3d 587 (3d Cir. 1982), a Pennsylvania resident sued a Missouri law firm in Pennsylvania for legal malpractice in connection with its representation in a Kansas replevin action. The Third Circuit held that the Missouri law firm had insufficient minimum contacts with Pennsylvania to justify the exercise of either specific or general jurisdiction in Pennsylvania as the Missouri law firm's sole contacts with Pennsylvania consisted of an advertisement in a nationwide legal directory circulated in Pennsylvania and the firm's agreement to handle the Kansas litigation. *Id.* at. 589.

The White Field Defendants have had even less contact with New Jersey than the Missouri firm in *Reliance Steel* had with Pennsylvania. With the exception of signing a retention agreement with the Olivo Defendants for the purpose of providing legal assistance to certain of the Olivo Defendants' clients, the White Field Defendants have had no other legally cognizable contact with the State of New Jersey. The underlying action concerns the White Field Defendants' representation of JCMS, a New York entity, in connection with the Xanboo Action, which was filed and litigated in California. The White Field Defendants did not conduct activities within this forum in the course of representing JCMS in the Xanboo action. The agreement specific to the representation of JCMS did not include a forum selection clause. *See Manning Aff., Ex. B*. Moreover, there is no evidence on the record that White Field or Ritcheson solicited, advertised, or otherwise proactively sought to establish business relationships with New Jersey entities,

including the Olivo Defendants. Clearly, the White Field Defendants lack sufficient minimum contacts with New Jersey to warrant this Court's exercise of personal jurisdiction over them. Therefore, the claims against these defendants are dismissed.

### b. *The Olivo Defendants' standing to assert claims against HGD*

As previously discussed, the Olivo Defendants' third party claims against HGD originate from Plaintiffs' allegations that Olivo reached an unauthorized and unfavorable settlement with a defendant in the Xanboo action, which necessitated the negotiation of a new settlement by HGD at JCMS's behest. *Am. Compl.* ¶ 68. In Counts I and II of the Third Party Complaint, Olivo Defendants assert claims for contribution and indemnification against HGD for any and all damages awarded to Plaintiffs in the JCMS action due to the "parties' joint duties to plaintiff JCMS in the Xanboo action." *Third Party Compl.* ¶ 26-33; *Third Party Pl. Br. P.* 7.

Specifically, Third Party Plaintiffs allege that "[w]hile denying any liability to plaintiffs, to the extent plaintiffs allege that the Olivo Defendants were negligent and/or otherwise damaged plaintiffs in connection with the litigation of the Xanboo action, the third party defendants are liable for said negligence insofar as they were primarily responsible for the litigation of the Xanboo action." *Third Party Compl*. ¶ 18. They further assert that "the third party defendants negligently counseled and/or advised plaintiffs to accept a settlement of the Xanboo action prior to the adjudication of Xanboo, Inc.'s motion to enforce the alleged settlement." *Id*. ¶ 23. Lastly, Olivo Defendants allege that "the third party defendants were aware of, and party to, the discussions and communications which form the alleged basis of plaintiffs' claims against the Olivo Defendants." *Id*. ¶ 20.

HGD characterizes the Third Party Complaint as a veiled attempt by the Olivo Defendants

to establish a duty of care between HGD and the Olivo Defendants by virtue of the parties' mutual representation of JCMS in the Xanboo action. *HGD Br. P.* 5. HGD argues that any duty owed by HGD was owed to JCMS, breach of which the Olivo Defendants have no standing to assert. *Id*. Critically, however, HGD posits that the Third Party Complaint is due dismissal because while HGD was primarily responsible for the Xanboo litigation, there is no dispute that Olivo was responsible for the February 2012 settlement at issue. *HGD Reply Br. P.* 5.

In order to substantiate a contribution or indemnity claim against HGD, Olivo must establish that HGD is liable to JCMS. "Common law cause of action for contribution and indemnification arises only when two or more persons become liable in tort to the same person for the same harm." *U.S. v. Monsanto Co.*, 182 F.Supp.2d 385, 411 (D.N.J. 2001). "It is common liability at the time of the accrual of plaintiff's cause of action which is the Sine qua non of defendant's contribution right." *Innes v. Marzano-Lesnevich*, 435 N.J. Super 198, 212 (App. Div. 2014).

HGD is not a named party in the JCMS action. In fact, in a declaration dated April 7, 2014, Joao absolved HGD of liability in the events that precipitated the JCMS action, stating:

> "[N]either JCMS nor I contend that HGD . . . were in any way responsible for any damages caused to JCMS or to me individually by the New Settlement which resolved the Xanboo action. In fact, I firmly believe that HGD's . . . involvement, if any, in the July 2012 settlement negotiations, which resulted in the New Settlement, allowed JCMS and me to mitigate the damages to JCMS, to me individually, and to the third parties, caused by the Unauthorized Olivo Settlement entered into by Olivo on February 20, 2012."

*Decl. of Raymond A. Joao*, ¶ 6.

Furthermore, Olivo accepted sole responsibility for the February 2012 settlement in a sworn declaration submitted in support of JCMS's opposition to Xanboo's motion to enforce said

12

settlement. See *HGD Reply Brief, Ex. A, Declaration of Dennis J. Drasco ("Drasco Decl.")* ¶¶ 6, 9-15. In essence, Olivo claimed that he accepted Xanboo's offer of settlement in error. Olivo acknowledged that he discussed potential settlement with attorneys for Xanboo Inc. between February 17, 2012 and February 20, 2012. *Id*. According to Olivo, on February 20, 2012, Olivo received a series of emails on his Blackberry cellular telephone from Xanboo's counsel. *Id*. At 7:03 p.m., Xanboo's counsel sent an email to Olivo, Steven Ritcheson, and Brian Hancock of HGD. *Drasco Decl.* ¶ 17. Olivo claimed that although he was in transit and thus unable to read the entirety of the message, "based on the portion [he] was able to read and [his] conversation with [Xanboo's counsel]" he believed that Xanboo's counsel was seeking to confirm that Joao's upcoming deposition would be postponed to allow the parties to conclude their settlement discussions. *Id*. Therefore, at 7:05 p.m., Olivo replied: "We agree to that—and I'm asking Brian Hancock or Steve to agree herein." *See Drasco Decl.* ¶ 17, Ex. A. In response, Xanboo's counsel requested that the agreement be placed "in a signed letter on letter-head." *See Drasco Decl.* ¶ 17, Ex. B.

At 8:25 p.m., Olivo received an email from Xanboo's counsel "that confirmed an 'agreement in principle' between Xanboo and JCMS." *See Drasco Decl.* ¶ 17, Ex. C. In the body of this email, which was addressed only to Olivo, Xanboo's counsel outlined the terms of the settlement agreement between Xanboo and JCMS. *Id*. In the Drasco declaration, Olivo posited that he "understood that [Xanboo's counsel] was still seeking confirmation that the depositions would be continued without objection two weeks later if the parties did not reach a settlement agreement", and that when he responded to this message by stating "agreed", he believed that he was confirming "that the parties would try to work out a deal and[,] if not[,] the deposition would take place and the parties would proceed towards trial." *See Drasco Decl.* ¶ 20. Olivo asserted that he

13

did not "consider that [Xanboo's counsel] would try to insert additional provisions into his email other than what he and I had discussed . . ." *Id.* ¶ 18. Lastly, Olivo admitted that he did not forward the February 20, 2012 email from Xanboo's counsel to Joao until March 9, 2012. *Id.* ¶ 22.

The foregoing admissions belie the Olivo Defendants' allegations before this Court that HGD was aware of and participated in the discussions that yielded the February 2012 agreement, or that alternatively, HGD should bear partial responsibility for the allegedly botched settlement agreement due simply to HGD's role as lead counsel in the Xanboo Action.

Even if accepted as true, HGD's knowledge of the settlement talks between Olivo and Xanboo counsel is not dispositive on the issue of joint liability. JCMS does not allege that the Olivo Defendants surreptitiously procured an agreement with Xanboo; rather, the Olivo Defendants are accused of entering into an unauthorized agreement with Xanboo on JCMS's behalf. *Id*. ¶¶ 74, 75. It was common knowledge that Olivo was brokering settlements with defendants in the Xanboo action, including Xanboo, on JCMS behalf. According to JCMS's pleadings, starting in November of 2011, Olivo was responsible for negotiating settlement agreements in advance of trial with all seven of the defendants remaining in the Xanboo action, subject to Joao's review and approval of the proposed terms. *Am. Compl*. ¶¶ 57, 58, 67.

Moreover, the record reveals that while HGD was counsel of record in the Xanboo action, Olivo facilitated the settlement agreement at bar. Olivo admitted that he alone held settlement discussions with Xanboo counsel. *Drasco Decl*. ¶¶ 11-14. Olivo was the only addressee on the February 20, 2012 email from Xanboo counsel regarding the terms of the agreement. *See Drasco Decl.* Ex. C. More importantly, there is no dispute that Olivo, not HGD, accepted Xanboo's terms via email, which email Xanboo allegedly relied upon in its motion to enforce the February 2012 settlement agreement. *Am. Compl*. ¶¶ 93-98; *Drasco Decl*. ¶¶ 18-20. Olivo does not allege that he

was directed by HGD to accept Xanboo's terms or that he consulted with HGD before doing so. In fact, a timeline of the emails attached to the Drasco declaration show that Olivo had already agreed to the settlement before informing co-counsel of the agreement. *See Drasco Decl.,* Ex. C. Therefore, it strains logic to hold HGD jointly liable for Olivo's unilateral actions.

Olivo Defendants also allege HGD is liable to JCMS for negligent counsel. In Olivo Defendants' view, it was unlikely that Xanboo would have prevailed on its motion to enforce the February 2012 agreement, because under California law "there is no presumption that settlement agreed to by the attorney binds his client" unless that attorney has "express authority to settle his client's claims." *See Olivo Br. P.* 14 (quoting *Anand v. Cal. Dept. of Developmental Servs.,* 626 F.Supp.2d 1061, 1064 (E.D. Cal. 2009)). Therefore, they argue, HGD's negligent advice to JCMS to enter into the July 2012 settlement before Xanboo's motion to enforce the February 2012 agreement could be adjudicated was a proximate cause of Plaintiff's claimed damages. *Id.*

First, this argument completely ignores Joao's sworn statement that HGD's involvement in the July 2012 settlement served to mitigate Joao's and JCMS's damages. *See Decl. of Raymond A. Joao,* ¶ 6. Secondly, even if Joao relied on HGD's purportedly faulty counsel in reaching the July 2012 settlement, the Olivo Defendants have no standing to assert said breach of duty on Joao or JCMS's behalf. Thirdly, as HGD argues, Olivo Defendants cannot save their contribution and indemnification claims by asserting separate allegations of negligence against HGD. *See HGD Reply Br. P.* 7. "The very essence of the action of contribution is common liability." *Katz v. Holzberg*, 2013 U.S. Dist. LEXIS 158012, at *15 (D.N.J. November 4, 2013) (quoting *Tomkovich v. Pub. Serv. Coordinated Transp.*, 61 N.J. Super. 270, 274, 160 A.2d 507 (App. Div. 1960)) (internal quotation marks omitted). "Where the pleadings show separate torts, severable as to time and breaching different duties, rather than a joint tort, dismissal of the third-party action is

15

appropriate." *Finderne Mgmt. Co., Inc. v. Barrett*, 355 N.J. Super. 197, 208, 809 A.2d 857 (App. Div. 2002). Here, Joao alleges that Olivo agreed to the February 2012 settlement without Joao's consent, while the Olivo Defendants contend that HGD rendered negligent advice to JCMS regarding the July 2012 settlement. The alleged torts differ in time and breach different duties. Therefore, the Olivo Defendants' third-party complaint warrants dismissal.

## IV. CONCLUSION

For the reasons stated above, Third-Party Defendants' Motions to Dismiss (Dkt. Nos. 39, 40) are **GRANTED**. An appropriate Order will follow.

s/ <i>Susan D. Wigenton</i><br>
<b>SUSAN D. WIGENTON</b><br>
<b>UNITED STATES DISTRICT JUDGE</b>

Orig:  Clerk
cc:    Parties
       Magistrate Judge Steven C. Mannion